# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHRISTINA  R. HARDY,
          Appellant,

          v.

UNITED STATES POSTAL SERVICE,
          Agency.

DOCKET NUMBER
PH-0752-14-0515-I-1

DATE: November 7, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Stanley C. Mason, Joppa, Maryland, for the appellant.

LaDonna L. Griffith-Lesesne, Esquire, Landover, Maryland, for the
    agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which
sustained her removal.  Generally, we grant petitions such as this one only when:
the initial decision contains erroneous findings of material fact; the initial
decision is based on an erroneous interpretation of statute or regulation or the

[1]  A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2 Effective February 7, 2014, the agency removed the appellant from her position as a Mail Handler Equipment Operator at the agency's Baltimore Incoming Processing and Distribution Center based on a charge of Unsatisfactory Attendance. Initial Appeal File (IAF), Tab 4 at 18, 20-23, and 25-27. In support of the charge, the agency alleged that from October 17, 2013, to December 4, 2013, the appellant incurred the following unscheduled absences: 4 hours unscheduled sick leave and 4 hours unscheduled part day sick leave on October 17, 2013; 8 hours unscheduled leave without pay on October 21, 2013; 8 hours unscheduled sick leave on November 14, 2013; 8 hours unscheduled sick leave without pay on November 18, 2013; 8 hours unscheduled sick leave without pay on November 22, 2013; and 24 hours unscheduled sick leave without pay on December 2-4, 2013. *Id.* at 25.

¶3 The appellant filed an appeal of her removal with the Board and requested a hearing. IAF, Tab 1. She raised affirmative defenses of harmful procedural

error, discrimination based on her race, age, sex, and sexual orientation, and disability discrimination based on failure to accommodate. *Id.* at 6; Tab 5 at 2-3.

¶4    After a hearing, the administrative judge issued an initial decision affirming the appellant's removal. IAF, Tab 15, Initial Decision (ID) at 1. The administrative judge found that the agency proved the charge by preponderant evidence, ID at 2-4, that the penalty of removal was reasonable, ID at 11-13, and that the appellant failed to prove her affirmative defenses, ID at 4-11.

¶5    The appellant has filed a petition for review of the initial decision, and an amendment to her petition for review. Petition for Review (PFR) File, Tabs 1, 3. The agency has filed a response in opposition to the appellant's petition for review. PFR File, Tab 5. The appellant has filed a reply to the agency's response. PFR File, Tab 6.

## ANALYSIS

The administrative judge correctly found that the agency proved the charge by preponderant evidence.

¶6    In U.S. Postal Service cases, the agency can predicate discipline on an employee's failure to follow leave requesting procedures and use of unscheduled leave, provided that the employee is clearly on notice of leave procedures and the likelihood of discipline for continued failure to comply with them. *Wesley v. U.S. Postal Service*, 94 M.S.P.R. 277, ¶ 14 (2003).

¶7    In sustaining the charge, the administrative judge considered the hearing testimony, including that of the appellant, the proposing official, and the Labor Relations Specialist (LRS) who processed the appellant's removal. ID at 3-4. In her hearing testimony, as summarized in the initial decision, the appellant did not dispute that she was absent on the dates in question or that those absences were unscheduled. ID at 3. She also admitted that she was aware of the agency's leave procedures; that she had to be regular in attendance; and that she could be removed if she was not regular in attendance. ID at 3. In addition, both the proposing official and the LRS testified that the appellant was well aware of the

agency's leave request policies, especially because she had been disciplined several times in the past for unscheduled absences. ID at 3-4.

¶8    The administrative judge also considered the documentary evidence and found that the record was "replete with evidence" that the appellant was on notice that she was required to be regular in attendance, specifically, to schedule and obtain authorization in advance for any absence. ID at 3. In particular, the administrative judge noted that the appellant had "received a steady stream of discipline" regarding her attendance from 2012 through her removal, including a 14-day suspension for Unsatisfactory Attendance in 2013.[2] ID at 3; *see* IAF, Tab 4 at 54. Based on the documentary evidence and testimony, the administrative judge found that the appellant failed to comply with the agency's requirement that she refrain from unscheduled absences, even though she had been repeatedly disciplined for such conduct. ID at 4. Accordingly, the administrative judge sustained the charge. ID at 4.

¶9    On review, the appellant alleges that the administrative judge erred in finding that the agency proved the charge by preponderant evidence. PFR File, Tab 1 at 4-5. Specifically, the appellant alleges that the agency failed to prove that some of the absences at issue in this appeal were unscheduled because the paperwork documenting those absences (i.e., Postal Service Form (PS) 3971) was incomplete. *Id.*; *see* IAF, Tab 4 at 42-48. For example, the appellant asserts that the agency failed to prove that her absence on November 17, 2013, was unscheduled because the PS 3971 documenting that absence does not indicate whether the absence was approved in advance. PFR File, Tab 1 at 5; *see* IAF,

---

[2] In addition to the 14-day suspension cited by the administrative judge, the appellant also received the following discipline regarding her attendance during the 2 years preceding her removal: (1) on June 6, 2012, a letter of warning for Unsatisfactory Attendance based on 72 hours of absences from December 16, 2011, to May 16, 2012; and (2) on December 21, 2012, a 7-day no time off suspension based on 40 hours of unscheduled absences from November 5, 2012, to December 4, 2012. IAF, Tab 4 at 56, 59.

Tab 4 at 44. Similarly, the appellant argues that the agency failed to prove that her absence on October 20, 2013, was unscheduled because the PS 3971 documenting that absence does not indicate when her supervisor was notified of her absence. PFR File, Tab 1 at 5; *see* IAF, Tab 4 at 46. Therefore, the appellant contends, the agency failed to prove that this absence was not "requested in advance." PFR File, Tab 1 at 5.

¶10    We find this argument unpersuasive. Significantly, the appellant does not dispute that she was absent on the days in question, nor does she challenge the administrative judge's finding that she admitted during her testimony that these absences were unscheduled. *See* ID at 3. The appellant also does not dispute the administrative judge's findings that she conceded during her hearing testimony that she was aware of the agency's leave procedures and knew that she could be removed if she was not regular in attendance. *See* ID at 3. In light of these circumstances, the fact that the forms documenting some of the appellant's unscheduled absences are incomplete provides no reason to disturb the administrative judge's well-reasoned finding that the agency proved the charge by preponderant evidence.

The administrative judge correctly found that the appellant failed to prove her affirmative defenses.

*Disability discrimination*

¶11    On review, the appellant also reasserts her claim of disability discrimination based on failure to accommodate. PFR File, Tab 1 at 6-8; IAF, Tab 5 at 3. In order to establish disability discrimination based on failure to accommodate, the appellant must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014). The Rehabilitation Act requires an agency to provide reasonable accommodation to the known physical or mental limitations of an otherwise

qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations.[3] *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 10 (2014). The ADAAA defines "qualified individual," in part, to mean "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADAAA defines "disability" to mean: "a physical or mental impairment that substantially limits[4] one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1)(A)-(C). "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Reasonable accommodation includes modifications to the manner in which a position is customarily performed to

---

[3] As a federal employee, the appellant's claim of disability discrimination arises under the Rehabilitation Act. However, the standards under the Americans with Disabilities Act have been incorporated by reference into the Rehabilitation Act. 29 U.S.C. § 791(g). The Americans with Disabilities Act Amendments Act of 2008 (ADAAA), which liberalized the definition of disability, became effective on January 1, 2009. *See* Pub. L. 110-325, 122 Stat. 3553 (2008), codified at 42 U.S.C. § 12101 *et seq.* Because the appellant was removed from her position on February 7, 2014, the ADAAA definition is applicable. Although the ADAAA changed the interpretation of the law as to the existence of a disability, it did not affect the requirements of the law as to reasonable accommodation. *See Davis v. U.S. Postal Service*, 119 M.S.P.R. 22, ¶ 11 n.4 (2012).

[4] The Equal Employment Opportunity Commission's ADAAA regulations provide that the term "'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADAAA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630(j)(1)(i). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii).

enable a qualified individual with a disability to perform the essential job functions, or reassignment of the employee to a vacant position whose duties the employee can perform. *Clemens*, 120 M.S.P.R. 616, ¶ 10.

¶12    The administrative judge found that the appellant presented scant evidence of exactly what her disability entailed other than to claim that she had a bad knee or bad knees. ID at 8. He also noted that the appellant's supervisors and the proposing and deciding officials testified that they did not regard her as disabled, and further, that she never requested accommodation of a disability. ID at 8. The administrative judge concluded that the appellant failed to establish that she is an individual with a disability because the record does not show that she has a physical impairment that substantially limits one or more major life activities, including working. ID at 8-9. The administrative judge also determined that, even if the record showed that the appellant's alleged impairment related to her position with the agency, her "inability to perform a single, particular job," i.e., Mail Handler, "does not constitute a substantial limitation in the major life activity of working." ID at 8-9 (citing 29 C.F.R. § 1630.2(j)(3) ; *Fraser v. Department of Agriculture*, 95 M.S.P.R. 72, ¶ 12 (2003)). Accordingly, the administrative judge found that the appellant failed to prove her claim of disability discrimination based on failure to accommodate. ID at 8-9.

¶13    The appellant contends on review that the administrative judge erred in analyzing her disability discrimination claim. PFR File, Tab 1 at 7-8. She asserts that the letter she received from the proposing official advising her that she had exhausted her leave under the Family and Medical Leave Act (FMLA) establishes that the agency knew that she had a medical condition and would continue to require "intermittent unscheduled leave." PFR File, Tab 1 at 7; *see* IAF, Tab 5 at 7. She contends that the agency therefore had an obligation to reasonably accommodate her but failed to do so. PFR File, Tab 1 at 7.

¶14    We disagree. Contrary to the appellant's apparent assumption on review, the fact that she qualified for FMLA leave does not establish that she was an

individual with a disability, i.e., that she has a physical or mental impairment that substantially limits one or more major life activity, that she has a record of such an impairment, or that she was regarded as having such an impairment. The record contains no other evidence to substantiate her claim that she is an individual with a disability. *Cf. Gonzalez-Brunet v. Donahoe*, E.E.O.C. Appeal No. 0120103081, 2012 WL 2356777, at *3 (E.E.O.C. June 12, 2012) (as part of the interactive process, an employer may ask an individual for reasonable documentation about that person's disability and functional limitations when the disability or need for accommodation is not obvious).

¶15        Furthermore, even assuming arguendo that the appellant established that she is an individual with a disability, we find no evidence that she requested an accommodation. *See Clemens*, 120 M.S.P.R. 616, ¶ 12 (a disability discrimination claim will fail if the employee never requested accommodation while employed). Thus, based on our review of the record, we discern no reason to disturb the administrative judge's determination that the appellant failed to prove her affirmative defense of disability discrimination based on failure to accommodate.

### *Disparate treatment*

¶16        To establish a claim of prohibited employment discrimination, an employee first must establish a prima facie case; the burden of going forward then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its action; and, finally, the employee must show that the agency's stated reason is merely a pretext for prohibited discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Regarding disparate treatment, an employee may establish a prima facie case of prohibited discrimination by introducing preponderant evidence to show that he is a member of a protected group, he was similarly situated to an individual who was not a member of the protected group, and he was treated more harshly or disparately than the individual who was not a member of his protected group. *Buckler v. Federal Retirement Thrift Investment*

*Board*, [73 M.S.P.R. 476](#), 497 (1997).  However, in a case like this, where the record is complete and a hearing has been held, the Board will proceed directly to the ultimate question of whether the appellant has demonstrated by a preponderance of the evidence that the agency's reason for its actions was a pretext for discrimination.  *See Berry v. Department of Commerce*, [105 M.S.P.R. 596](#), ¶ 10 (2007).

¶17        During the proceedings below, the appellant argued that the agency discriminated against her based on her race (African-American), age (over 40), and sex by offering other employees at her worksite last chance agreements (LCAs) in lieu of removal for attendance-related misconduct.  IAF, Tab 5 at 3.  In support of her claim, the appellant identified four employees at her worksite who were provided LCAs: a Caucasian male; a male whose race she did not know; and two African-American females.  *See* ID at 6; IAF, Tab 9 at 7-19, 23-25.

¶18        Regarding the appellant's age discrimination claim, the administrative judge found it impossible to determine if the appellant was treated more harshly than other employees based on her age because she failed to establish the ages of her alleged comparators.  ID at 6.  As for the appellant's race and sex discrimination claims, the administrative judge found that there is scant evidence that the appellant was treated differently than those outside her protected class, as two of the comparators were the same race and sex as the appellant.  ID at 6.  The administrative judge also noted that the record evidence showed that the appellant was offered LCAs in conjunction with prior discipline. [5]  ID at 6 (citing IAF, Tab 8, at 16-23, 23-25).  The administrative judge found that the record contains no evidence of an agency policy, rule, or regulation that requires that an employee be offered an LCA after every disciplinary infraction.  ID at 6-7.  Thus, the

---

[5] Specifically, in July 2008 the parties executed an LCA pertaining to the appellant's March 8, 2008 removal.  IAF, Tab 8 at 16-21.  Also, in September 2011, the parties executed a settlement agreement involving the appellant's August 12, 2011 proposed removal.  *Id.* at 23-25.

administrative judge found, the appellant failed to establish that she was discriminated against on the bases of race, age, or sex when the agency did not offer her an LCA in lieu of removal.  ID at 7.

¶19     On review, the appellant challenges the administrative judge's finding that she failed to prove her affirmative defenses of discrimination based on her race and sex.[6]  The appellant asserts that she proved these claims by establishing that a male Caucasian employee who had medical issues was given an LCA.  PFR File, Tab 1 at 5-6.  She also alleges that the administrative judge erred in finding that LCAs are not "part of" the collective bargaining agreement between the agency and her union.  *Id.* at 5.

¶20     The appellant has apparently misread the initial decision.  Contrary to the appellant's assertion on review, the administrative judge did not find that LCAs are not part of the collective bargaining agreement between the agency and the appellant's union.  PFR File, Tab 1 at 5.  Rather, the administrative judge found that "[t]here is no record evidence . . . and the appellant points to none, of an agency policy, rule or regulation which requires that an employee be offered an LCA after every disciplinary infraction."  ID at 6-7.

¶21     Further, contrary to the appellant's assertion on review, the fact that the agency offered an LCA to a Caucasian male employee is insufficient to establish a claim of disparate treatment discrimination based on race and sex.  Rather, for another employee to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant aspects of the appellant's employment situation must be "nearly identical" to that of the comparator employee; thus, to be similarly situated, a comparator must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without

---

[6] The appellant does not challenge the administrative judge's finding that she failed to prove her age discrimination claim.  Based on our review of the record, we discern no reason to disturb this finding.

differentiating or mitigating circumstances. *Ly v. Department of the Treasury*, 118 M.S.P.R. 481, ¶ 10 (2012). The appellant clearly failed to meet this standard. For example, the appellant did not present any evidence to show that the employees she identified as comparators had received prior discipline. Accordingly, we discern no reason to disturb the administrative judge's finding that the appellant failed to prove her claim of discrimination based on disparate treatment.

### *Sexual orientation discrimination*

¶22    As previously noted, the appellant also raised a claim of sexual orientation discrimination in this appeal. IAF, Tab 1 at 6, Tab 5 at 3, Tab 9 at 4. The administrative judge did not address this claim on the merits because the Board has held that a claim of discrimination on the basis of sexual orientation is not cognizable discrimination under Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C. § 2000e *et seq.*, as incorporated into the Civil Service Reform Act at 5 U.S.C. § 2302(b)(1). ID at 2 n.2 (citing *Mahaffey v. Department of Agriculture*, 105 M.S.P.R. 347, ¶ 23 n.10 (2007); *Morales v. Department of Justice*, 77 M.S.P.R. 482, 484 (1998)). Further, as explained by the administrative judge, the Board has not held that such a claim may be heard as any other form of prohibited personnel practice under 5 U.S.C. § 2302(b). ID at 2 n.2 (citing *Mahaffey*, 105 M.S.P.R. 347, ¶ 24). Nor do we find it necessary to establish such precedent in this case. As discussed below, there is insufficient evidence to support a violation under any view of the statute.

¶23    The appellant argues on review that the administrative judge erred by not deciding the merits of her sexual orientation discrimination claim. PFR File, Tab 1 at 6. The appellant asserts that, while the Board has ruled that sexual orientation itself is not an independent source for discrimination, the Supreme Court has ruled that Title VII claims can proceed if lesbian, gay, or bisexual individuals can demonstrate that they were the victims of unlawful sex discrimination in the form of sexual harassment or gender stereotyping. *Id.* The

appellant alleges that the administrative judge's failure to decide the merits of her sexual orientation discrimination claim was prejudicial to her because several agency officials stated that they knew of her sexual orientation. *Id.*

¶24      However, the appellant's sole argument in support of her sexual orientation discrimination claim consists of her allegation that several agency officials were aware of her sexual orientation. PFR File, Tab 1 at 6. Even assuming that this allegation is true, the fact that agency officials were aware of the appellant's sexual orientation without any other corroborative evidence is insufficient to establish that the agency discriminated against the appellant on that basis.

*Harmful Procedural Error*

¶25      The appellant reiterates her harmful procedural error claim on review. PFR File, Tab 1 at 6-7. An agency error is harmful only where the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Bair v. Department of Defense*, 117 M.S.P.R. 374, ¶ 8 (2012). It is the appellant's burden to prove that a procedural error occurred and that the error substantially prejudiced her rights such that the outcome was probably affected. *Mercer v. Department of Health & Human Services*, 772 F.2d 856, 859 (Fed. Cir. 1985); 5 C.F.R. § 1201.56(c)(3).

¶26      In support of this affirmative defense, the appellant alleged both below and on review that the agency committed harmful procedural error in two respects. First, she contends that the agency violated section 511.42 of the agency's Employee and Labor Relations Manual (ELM), which sets forth management's responsibilities regarding unscheduled absences. PFR File, Tab 1 at 7; IAF, Tab 9 at 4; *see* IAF, Tab 4 at 63. Section 511.42(b) provides that U.S. Postal Service officials must discuss attendance records with employees when warranted. IAF, Tab 4 at 63. The appellant asserts that the agency violated this provision by failing to discuss her attendance problems with her prior to her removal. PFR File, Tab 1 at 7.

¶27     Second, the appellant alleges that the agency committed harmful procedural error because the agency's concurring official did not see the appellant's Pre-Disciplinary Interview (PDI) Questionnaire before concurring in the appellant's proposed removal.  PFR File, Tab 1 at 7; *see* ID at 9-10.

¶28     The administrative judge properly rejected as specious the appellant's argument that the agency had an obligation pursuant to ELM section 511.42 to discuss her leave problems.  ID at 10.  The administrative judge noted that the purpose of section 511.42 is to ensure that the agency place the employee on notice that there is a problem with attendance.  ID at 10.  In this case, however, the appellant conceded that she was aware of the agency's leave policies and regulations.  ID at 10.  The administrative judge found that, in light of the appellant's prior discipline for attendance related misconduct, she was clearly aware of a problem with her continuous unscheduled absences.  ID at 10-11.  The administrative judge further found that, because the proposing official, prior to proposing her removal, conducted a PDI with the appellant during which her attendance deficiencies were undoubtedly discussed, that meeting met the standard set forth in section 511.42.  ID at 11.  Therefore, the administrative judge found, the agency failed to establish that the agency violated section 511.42 of the ELM.  ID at 11.

¶29     The appellant challenges this finding on review, arguing that the administrative judge erred in finding that the agency did not commit harmful procedural error in applying ELM section 511.42.  PFR File, Tab 1 at 7.  She asserts that, although the agency asked her whether she knew that she was required to be "regular in attendance," the agency did not explain what it meant by "unsatisfactory attendance."  *Id.*  The appellant further asserts that if the agency had not made this error, it would have reached a different conclusion.  *Id.*

¶30     In light of the appellant's prior discipline for attendance issues, her admission that she was familiar with the agency's leave regulations, and her awareness that she was required to be regular in attendance, we find unpersuasive

the appellant's assertion that the agency did not satisfactorily explain what it meant by "unsatisfactory attendance." Thus, we find no reason to disturb the administrative judge's well-reasoned determination that the appellant failed to prove her affirmative harmful procedure error claim regarding section 511.42 of the ELM.

¶31     The administrative judge also rejected the appellant's argument that the agency committed harmful procedural error when its concurring official did not see the appellant's PDI Questionnaire before concurring in the appellant's proposed removal. ID at 11. The administrative judge found that the appellant failed to identify a law, rule, or regulation that required the concurring official to review the PDI Questionnaire prior to concurring in a proposed disciplinary action. ID at 11. In that regard, the administrative judge noted that the LRS testified that there was no law, rule, or regulation mandating such an action by a concurring official. ID at 11. Therefore, the administrative judge found, the appellant failed to establish that an error occurred as alleged. ID at 11.

¶32     The appellant challenges this finding on review and asserts that the LRS's testimony is "not true."[7]  This argument is mere disagreement with the administrative judge's explained findings and, as such, provides no basis to disturb the initial decision. *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987).

The administrative judge correctly found removal is a reasonable penalty.

¶33     Where, as here, the agency's charge is sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Adam v. U.S. Postal Service*, 96 M.S.P.R. 492, ¶ 5 (2004), *aff'd*,

---

[7] In support of her claim, the appellant submits two documents with her petition for review. PFR File, Tab 1 at 11-38. As further discussed below, we have not considered these documents, which the appellant submits for the sole purpose of impeaching the LRS's testimony. *Id.* at 7, 9.

137 F. App'x 352 (Fed. Cir. 2005). In doing so, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id*., ¶ 5. The Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that it clearly exceeded the bounds of reasonableness in determining the penalty. *Id.* It is not the Board's role to decide what penalty it would impose, but, rather, whether the penalty selected by the agency exceeds the maximum reasonable penalty. *Id*., ¶ 7; *Lewis v. General Services Administration*, 82 M.S.P.R. 259, ¶ 5 (1999).

¶34      The decision notice and hearing testimony of the deciding official, as summarized in the initial decision, as well as the deciding official's written analysis of the *Douglas* factors, show that he properly considered the *Douglas* factors in sustaining the appellant's removal. IAF, Tab 4 at 20-23; ID at 12. The deciding official found that removal was the appropriate penalty in light of the appellant's prior discipline and the repeated, unsuccessful attempts to correct her attendance problems. ID at 12. The deciding official stated that, although the appellant was on notice that her conduct was unacceptable, she continued to have unscheduled absences and did not offer any compelling evidence in mitigation that would have persuaded him to impose a lesser penalty. ID at 12.

¶35      In assessing the reasonableness of the penalty, the administrative judge found that although the appellant had approximately 20 years of service at the time of her removal, she had a prior disciplinary record that consisted of the three attendance-related actions referenced above, as well as a 14-day suspension on September 26, 2013, for unsatisfactory work performance. ID at 12; *see* IAF, Tab 4 at 50-52. The administrative judge correctly found that, because these prior actions were not clearly erroneous, they may properly serve as aggravating factors in this case. ID at 12-13 (citing *Bolling v. Department of the Air Force*, 9 M.S.P.R. 335, 339-40 (1981)). The administrative judge further found

that the agency can have little confidence in the appellant's rehabilitative potential, given her continuing failure to exercise satisfactory attendance and comply with the agency's leave procedures. ID at 13. The administrative judge therefore found that the penalty of removal was reasonable under the circumstances of this case. ID at 13.

¶36      In the amendment to her petition for review, the appellant alleges that the administrative judge erred in finding that removal was a reasonable penalty, and she recites the Board's standard for disparate penalty analysis set forth in *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 15 (2010). PFR File, Tab 3. To the extent that the appellant is attempting to raise a claim of disparate penalties, we find that she failed to prove it. To establish disparate penalties, the appellant must show that there is enough similarity between both the nature of the misconduct and other factors, such as whether the appellant and the comparator were in the same work unit, had the same supervisor and/or deciding official, and whether the events occurred relatively close in time, to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012); *Lewis*, 113 M.S.P.R. 657, ¶ 15. The appellant's disparate penalties claim consists solely of her allegation that other employees at her worksite were offered LCAs for attendance issues. This allegation is insufficient to show that there is enough similarity between both the nature of the conduct and other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. Recognizing that the Board must accord proper deference to the agency's primary discretion in managing its workforce, we see no reason to disturb the administrative judge's finding that removal is a reasonable penalty in this case. *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981).

Documents submitted on review.

¶37    The appellant submits the following documents with her petition for review: (1) a December 3, 2002 decision in an arbitration between the agency and the National Rural Letter Carriers Association, PFR File, Tab 1 at 11-36; and (2) provisions of the collective bargaining agreement between the agency and the appellant pertaining to review of discipline, *id*. at 37-38. The Board generally will not consider evidence submitted for the first time on review absent a showing that the documents and the information contained in the documents were unavailable before the record closed despite due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). The Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). To constitute new and material evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed. *Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989).

¶38    The documents the appellant submits on review are either undated or significantly predate the close of the record and she has made no showing that they were unavailable before the record closed despite her due diligence. The appellant's admitted purpose in submitting these documents is to impeach the testimony of an agency witness. PFR File, Tab 1 at 9. Evidence offered merely to impeach a witness's credibility is generally not considered new and material. *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 18 (2014). Therefore, we have not considered the documents that the appellant submits on review. *Avansino*, 3 M.S.P.R. at 214.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color,

religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.   *See*  42 U.S.C.  § 2000e5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:              _____
                           William D. Spencer
                           Clerk of the Board

Washington, D.C.